IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TRAVELEX INSURANCE SERVICES,
INC., a Delaware Corporation;

    Plaintiff,

vs.

LYNN BARTY,

    Defendant.

8:17CV295

MEMORANDUM AND ORDER

This matter is before the Court on defendant Lynn Barty's motion for partial summary judgment, Filing No. 50. This is an action for breach of a confidentiality and non-solicitation agreement, tortious interference with business and contractual relationships, breach of common law duty of loyalty, and violations of the Nebraska Trade Secrets Act, Neb. Rev. Stat. § 87-502(2). The action was originally filed in Nebraska state court and was removed to this Court under 28 U.S.C. § 1441(b). Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332.

As relevant to this motion, Travelex Insurance Services, Inc. ("Travelex"), alleges that defendant Lynn Barty, its former employee, breached an alleged 2008 Confidentiality and Non-solicitation agreement by becoming employed by a competitor, Arch Insurance Group, Inc. ("Arch"). Barty seeks a summary judgment in her favor on Travelex's breach-of-nonsolicitation claim. She contends that she never signed the agreement. She argues that the agreement is void under the statute of frauds, that Travelex cannot show mutual assent to the agreement, and the agreement is unenforceable under both Nebraska and New York law.

In response, Travelex argues there are genuine issues of material fact as to whether an enforceable non-solicitation agreement exists. Travelex maintains that Barty signed the agreement and accepted an offer of employment that was contingent on signing the agreement, though it concedes that it does not possess a signed copy of the agreement.

I. FACTS

The parties agree to the following facts.[1] Travelex is a corporation that provides travel insurance products and services. It is organized and exists pursuant to the laws of Delaware with its principal business in Omaha, Nebraska. The record shows Barty first worked for Travelex as Vice President of Finance for Travelex Americas in New York in 1998. Filing No. 52-9, Barty Dep. at 12. At that time, Travelex Americas was the parent company and it owned subsidiaries, including Travelex Insurance Services. *Id.* at 12-13.

In 2007, Barty was hired as a contract worker with Travelex Insurance Services and she continued to work in New York in that position. *Id.* at 41. Barty signed a Confidentiality Agreement in connection with her employment as a contract worker. Filing No. 52-4, Ex. 16, Confidentiality Agreement dated August 2, 2007 ("2007 Confidentiality Agreement"); Filing No. 52-8, Ex. 36, Deposition of Mary Jo Gray ("Gray Dep.") at 55-56; Filing No. 52-7, Ex. 35, Rule 30(b)(6) Deposition of Michael Ambrose ("Ambrose Dep.") at 15. The 2007 Confidentiality Agreement had no non-solicitation or

---

[1] Except where otherwise indicated, the facts are gleaned from the parties' statements of undisputed material facts in their respective briefs. *See* Filing No. 51, defendant's brief at 2-5; Filing No. 55, plaintiff's brief at 2-9; Filing No. 57, defendant's reply brief at 3-5.

noncompete clause and the agreement was governed by Nebraska law. Filing No. 52-4, Ex. 16, 2007 Confidentiality Agreement at 2.

In January 2008, Barty was hired by Travelex as a full-time, permanent employee in the position of a Regional Account Manager in New York. Filing No. 56-2, Ex. B, Barty Dep. at 52-53. She resided at all times during her employment in New York but traveled to Nebraska two or more times per year. *Id.* at 15-16; Filing No. 56-12, Ex. D, Gray Dep. at 44. In connection with her hiring, Travelex presented Barty with employment documents in January 2008. *See* Filing No. 56-5, Ex. B(3), 2008 Offer Letter; Filing No. 56-9, Ex. C(1) (same); Filing No. 56-10, Ex. C(2), Confidentiality and Non-Solicitation Agreement ("the 2008 Non-Solicitation Agreement"). The 2008 Non-Solicitation Agreement forms the basis of Travelex's breach of contract claim. Filing No. 1-1, Complaint at 4-5.

That agreement, assuming it was signed, would restrict Barty from competing with Travelex for one year following the termination of her Travelex employment. Filing No. 56-10, Ex. C(2), 2008 Non-Solicitation Agreement at 1-2. In particular, the 2008 Agreement provides:

> For a period of one year following the termination of employment with [Travelex] for any reason whatsoever, [Barty] shall refrain from directly or indirectly providing or soliciting to provide products or services which compete with those provided by [Travelex] to any existing or prospective customer of [Travelex] with whom [Barty] had personal contact and provided (or participated in a proposal to provide) products or services during the two-year period prior to termination of employment. For purposes of this Agreement, "existing customer" shall mean any person or entity that has purchased Employer's products or utilized its services during the two-year period preceding termination of employment with Employer and "prospective customer" shall mean any person or entity which had been solicited by Employer during the two-year period preceding termination of employment.

*Id.* It would also restrict Barty from disclosing "Confidential Information" (as defined in the agreement) indefinitely and without a time limitation. *Id.* at 1. The 2008 Agreement contains a New York law choice of law provision. *Id.*

Travelex's personnel file contains a number of documents with Barty's signature, but there is no signed original or copy of the agreement at issue. Filing No. 52-3, Ex. 13, Response to Request No. 1. Travelex admits that it does not possess any such signed agreement. *Id.*; *see also* Filing No. 52-8, Ex. 36, Gray Dep. at 71; Filing No. 52-7, Ex. 35, Rule 30(b)(6) Deposition of Michael Ambrose at 14. Travelex Human Resources Manager Mary Jo Gray testified that she had seen a signed copy of the 2008 agreement. Filing No. 52-8, Ex. 36, Gray Dep. at 71. Barty unequivocally denies ever signing, or agreeing to the terms of, the agreement. Filing No. 56-2, Ex. B, Barty Dep. at 106 and 133.

In 2016, Travelex was sold to another entity, Cover-More Group. *Id.* at 106-07, 109; Filing No. 56-12, Ex. D, Gray Dep. at 94-95. In its disclosure of corporate affiliations, Travelex identifies Cover-More Holdings USA, Inc./Cover-More, Inc. as its parent corporation. Filing No. 7, Corporate Disclosure Statement. As a result of the sale, all Travelex employees were required to sign "updated" employment agreements along with "updated" confidentiality and non-solicitation agreements. Filing No. 56-12, Ex. D, Gray Dep. at 94-95; *see* Filing No. 56-7, Ex. B(5), Offer Letter and Confidentiality and Non-Solicitation Agreement dated 11/15/2016; *see also* Filing No. 52-2, Ex. 11, 2016 Confidentiality and Non-Solicitation Agreement ("2016 Agreement"). Mary Jo Gray, human resources manager, testified as follows about the 2016 documents:

4

| | |
|---|---|
| Q. | I am handing you what's been marked as Exhibit 11. Have you seen Exhibit 11 before today? |
| A. | Yes. |
| Q. | Do you know who—what—first of all, what is Exhibit 11? |
| A. | Exhibit 11 was the confidentiality and non-solicitation agreement that due to the sale of Travelex Insurance Services to Cover-More, that all Travelex Insurance Services employees were given to sign. |
| Q. | When you say "due to the sale of Cover-More," what about the sale required signing of new agreements? |
| A. | It was updating. Every [Travelex Insurance Services] employee received an employment agreement along with the confidentiality/non-solicitation agreement outlining the terms of their compensation remaining unchanged, details of their bonus because the bonus had been paid prior to the sale as opposed to it being paid in the new calendar year. So, it was just making confirmation clear for Cover-More that this agreement was signed and in place for all employees, and then also in the offer—or the employment agreement stated the changes with Cover-More as our owner. |

Filing No. 56-12, Ex. D, Gray Dep. at 94-95. She also stated "It was our current confidentiality and non-solicitation agreement that we had in place prior to the sale and the current agreement. We weren't making any changes to this. We were just updating it for the purposes of part of the employment agreement and the changes there." *Id.* at 95.

The 2016 Agreement states on its face that it "supersedes any and all prior agreements between Employer and Employee concerning the matters addressed herein." Filing No. 52-5, 2016 Non-Solicitation Agreement at 1. The consideration for the agreement was stated to be "the compensation and benefits Employee will receive." *Id.* The terms of the 2016 agreement differ from the 2008 agreement in that the term of the restriction on solicitation following separation from employment is extended from

5

one year to eighteen months and the agreement specifies that Nebraska law, rather than New York law, applies to the agreement.  *Id.* at 1-2.  The 2016 Offer Letter provides that Barty's title, salary, vacation time, hours and benefits were unchanged, but the company's bonus policy had changed.  Filing No. 56-7, Ex. B(5), Offer Letter at 1-2; *see* Filing No. 56-12, Gray Dep. at 95.  The offer letter was expressly conditioned on "signed receipt of the attached Confidentiality Agreement."  Filing No. 56-7, Ex. B(5), Offer Letter at 2.

On or about November 16, 2016, Travelex presented Barty with the new employment offer letter containing, and contingent upon, the 2016 Confidentiality and Non-Solicitation form.  Barty did not accept the new offer of employment and did not sign the new non-solicitation agreement.  Filing No. 52-8, Gray Dep. at 96.  Travelex terminated Barty's employment on May 31, 2017, for declining to sign the 2016 Non-Solicitation Agreement.  Barty began to work for Arch after Travelex terminated her employment.

II. LAW

Summary judgment is appropriate when, the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  "The movant 'bears the initial responsibility of informing the district court of the basis for its motion and must identify 'those portions of [the record] . . . which it believes demonstrate the

absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (*en banc*) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* ( quoting *Celotex*, 477 U.S. at 324).

A "genuine" issue of material fact exists "when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Id.* "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

In diversity cases, the choice of law is governed by the forum state's choice-of-law rules. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *In re Derailment Cases*, 416 F.3d 787, 794 (8th Cir. 2005). Nebraska follows the Restatement (Second) of Conflicts of Laws. *DCS Sanitation Mgmt., Inc. v. Casillo*, 435 F.3d 892, 895 (8th Cir. 2006). When the relevant legal principles are the same in both states, "what has come to be called a false conflict" is presented and the court need not resolve the choice of law issue. See *A.P. Leonards v. So. Farm Bureau Cas. Ins. Co.*, 279 F.3d 611, 612 (8th Cir. 2002).

Under the law of both Nebraska and New York, the elements of a claim for breach of contract claim essentially the same. See *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (the elements of breach of contract are a contract, performance of the contract by one party, breach by the other party, and damages)(applying New York law); *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002) (to recover on a claim for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty). Forming a contract requires "an offer, acceptance, consideration, mutual assent and intent to be bound." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) (applying New York law); *Linscott v. Shasteen*, 847 N.W.2d 283, 289 (Neb. 2014) (to create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract). In both states, if an agreement is not capable of being performed within one year, the statute of frauds applies. See *Diversified Group, Inc. v. Daugerdas*, 139 F. Supp. 2d 445, 458-59 (S.D.N.Y. 2001) (applying New York Law); *Linscott,* 847 N.W.2d at 284.

Similarly, the law in Nebraska and New York is roughly the same with respect to restrictive covenants in employment. Under Nebraska law, a post-termination covenant not to compete must be reasonable in both space and time so that the restraint imposed is no greater than necessary to achieve their legitimate purpose. *H & R Block Tax Servs., Inc. v. Circle A Enters., Inc.*, 693 N.W.2d 548, 556 (Neb. 2005). In Nebraska, a covenant not to compete is only valid if it restricts the former employee from soliciting or working for clients of the former employer with whom the former employee actually had

contact. See *Mertz v. Pharmacists Mut. Ins. Co.,* 625 N.W.2d 197, 204-05 (Neb. 2001). New York courts generally adhere to "a strict approach to enforcement of restrictive covenants." *Am. Inst. of Chem. Engineers v. Reber-Friel Co.*, 682 F.2d 382, 386 (2d Cir. 1982) (footnote omitted)(applying New York law). Restrictive covenants are rigorously examined and enforced only to extent necessary to protect employer from unfair competition which stems from employee's use or disclosure of trade secrets or confidential customer lists or confidential customer information to protect the goodwill of the employer's business or when employer is exposed to special harm because of unique nature of employee's services. *Id.* at 387 (noting that enforcement of restrictive covenants conflicts with the general public policy favoring robust and uninhibited competition, and powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood). New York courts additionally resist enforcing non-compete agreements when an employee has been involuntarily terminated without cause. See *Post v. Merrill Lynch, Pierce, Fenner & Smith*, 48 N.Y.2d 84, 89 (1979).

III. DISCUSSION

The Court finds the defendant's motion for summary judgment on the Travelex's claim for breach of the 2008 Non-Solicitation Agreement should be granted. Undisputed evidence shows that the plaintiff cannot recover for breach of that agreement because the agreement cannot be produced and was no longer in force at the time Barty left her employment at Travelex. Notwithstanding whether or not the 2008 agreement was ever signed, that agreement would have become a nullity at the time of the acquisition of Travelex by Cover-More. The 2016 agreement was effectively an offer of continued employment by a different entity.

9

The 2016 offer and agreement, by its terms, superseded the earlier agreement. Travelex/Cover-More offered Barty the opportunity to continue working at the newly acquired company that was conditioned on signing a new agreement. Barty declined that offer. The mutuality of obligation on which the 2008 covenant rested—the quid-pro-quo that Travelex would continue to employ the employee if the employee covenanted not to compete—was destroyed by the employer's offer of a new contract of employment, conditioned on different terms. There was no longer privity of contract between Barty and Travelex Services, Inc., the former employer, because it had been acquired by a different company. In essence, a different entity was negotiating a new contract.

Contrary to Travelex's characterization of the 2016 agreement as a mere "update" of the 2008 Agreement, the document shows on its face that it is a new agreement. If it was a mere update there would be no substantial reason to require all employees under penalty of termination to sign it. Importantly, the 2016 employment documents materially altered the provisions of the former agreement. The changes in terms generally inured to the detriment of employees. The duration of the non-solicitation restriction was extended from one year to eighteen months. The choice of Nebraska rather than New York law to govern the contract was arguably deleterious in that an employee arguably lost the benefit of application of New York reluctance to enforce a restrictive covenant against an employee who was terminated without cause.

The Court need not determine any choice of law issues with respect to restrictive covenants, because the laws of New York and Nebraska are the same with respect to contract law. Under contract law principles, it is clear that Travelex cannot enforce the

2008 Non-solicitation agreement against Barty in these circumstances. Ms. Barty was not offered the option to continue to be employed under the terms of the 2008 agreement, even if she had signed it. Her only option was to sign the 2016 agreement. Travelex concedes that agreeing to the 2016 Agreement was a condition of employment and Barty's refusal to sign it was the reason for her termination.

Contrary to Ms. Gray's characterization of the 2016 documents as mere "updates," the offer conditioned on signing a non-solicitation agreement created a new employment relationship. It was not the "same thing" as the earlier agreement—it involved different parties and terms. Failing to sign the new agreement had a concrete consequence—termination. Travelex cannot rely on the 2016 Agreement to justify its termination of Barty for cause while simultaneously attempting to enforce the 2008 agreement. Travelex has no claim for enforcement of the 2008 agreement and Barty is entitled to a judgment of dismissal on that claim. Accordingly,

IT IS ORDERED:

1. The defendant's motion for partial summary judgment ([Filing No. 50](Filing No. 50)) is granted.

2. The plaintiff's claim for breach of contract (First Claim for Relief) is dismissed.

Dated this 10th day of April, 2019.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge